# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | DOCKET NO.: 18-CR-10212-MLW |
| | ) | |
| PHILLIP HONG | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Phillip Hong is a 24 year old man with no prior contact with the criminal justice system. He is a graduate from Massachusetts College of Pharmacy & Health Sciences with a degree in pre-medicine. Shockingly to those who know him, Mr. Hong used his computer to access child pornography. He downloaded images and viewed them. He never distributed any such material and there is absolutely no evidence that he ever acted inappropriately to a minor. As a result of his actions, Mr. Hong faces a lifelong stigma and public vitriol. Mr. Hong pled guilty to one count of possession of child pornography and one count of receipt of child pornography.

Mr. Hong requests that the Court impose a sentence of 60 months. Under the circumstances of this case, which include: (1) Mr. Hong's otherwise law-abiding life and low risk of recidivism; (2) the flawed nature of the federal sentencing guidelines in child pornography cases and the fact that the guidelines provide little assistance to the Court in determining a sentence that is "sufficient but not more than necessary" as mandated by 18 U.S.C. § 3553(a). Other courts that have considered this guideline have agreed. *See, e.g.*, *United States v. Dorvee*, 616 F.3d 174, 188 (2nd Cir. 2010); *United States v. Hanson*, 561 F.Supp.2d 1004, 1009 (E.D. Wis. 2008); *United States v. Johnson*, 588 F.Supp.2d 997, 1003 (S.D.Iowa 2008); *United States v. Grober*, 595 F.Supp.2d 382, 397 (D.N.J. 2008); *United States v. Burns*, 2009 WL 3617448 (N.D. Ill. 2009); and (3) the facts and circumstances of the instant case.

As more fully explained below, a term of imprisonment of five years, to be followed by five years of supervised release constitutes a "sufficient but not greater than necessary" sentence to achieve the four purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

## **ARGUMENT**

While this Court must still correctly calculate the sentencing guideline range, *Gall v. United States*, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, *id.* at 51; *Nelson v. United States*, 555 U.S. 350, 352 (2009), but must treat it as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The Court must "consider all of the §3553(a) factors," "make an individualized assessment based on the facts presented," *id.* at 49-50, and explain how the facts relate to the purposes of sentencing. *Id.* at 53-60; *Pepper v. United States*, 131 S. Ct. 1229, 1242-43 (2011). The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Id.* at 101; *Pepper*, 131 S. Ct. at 1242-43.

The First Circuit elaborated on the meaning and breadth of the so-called parsimony principle in *United States v. Yonathan Rodriguez*, 527 F.3d 221 (1st Cir. 2008). In *Rodriguez*, the First Circuit stressed that the Supreme Court ruling in *Kimbrough* requires a "more holistic inquiry" and that "section 3553(a) is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the thread of an overarching principle." *Id*. at 228. That overarching principle is to "impose a sentence sufficient but not greater than necessary." *Id.* In reaching a decision on what constitutes an appropriate sentence, the district court should "consider all the relevant factors" and "construct a sentence that is *minimally sufficient* to achieve the broad goals of sentencing." *Id.* (emphasis added).

## I. THE CIRCUMSTANCES OF THE OFFENSE AND MR. HONG'S HISTORY AND CHARACTERISTICS.

Phillip Hong is 24 years old and a college graduate. Born and raised in Massachusetts to working class immigrant parents, Mr. Hong has lived with his parents and siblings throughout his life. His parents, Kuho Hong and Sunae Eum, emigrated from Korea in 1993. Phillip was born in 1994 and a few years later his parents opened up a dry cleaning business.

Prior to this case, Mr. Hong graduated from Massachusetts College of Pharmacy & Health Sciences, and obtained his EMT license. He went on to work for Brewster Ambulance Company for approximately one year. Ill-suited for the work, he left the job shortly before his arrest in the instant case, and was trying to determine his next step in life. Spending more and more time at home alone led to more time on the computer, which ultimately led him to commit the instant offense.

The offense before the Court came as a great shock to those who knew Mr. Hong. Phillip is the oldest of three children and spent his youth working at his parents' business and taking care of his younger siblings. He was a good student who never got into any trouble. As his family recounts, he provided a stabilizing force within the family and took on the role of caretaker for his younger siblings. His father writes how Phillip assumed the role of parent to his younger siblings:

> When he was 6 years old, we opened a small dry cleaners. By the time he was barely 13 years old, he took over parental duties for his younger siblings on behalf of his full-time worker parents, preparing their meals and assisting their homework.

Letter from Kuho Hong; attached as part of Exhibit 1.

His sister, Elizabeth, similarly recalls how Phillip assumed the mantle of caregiver:

> To me, Phillip Hong is a man that is very important to us in our lives because of all the affectionate support he gave to our family. Living with busy parents has not been very easy for any of us as a family of six, especially in hard times when business is not going well but, my brother was always there to help my

> dad with piles of work, and my mom when she must give her children a ride to an appointment. Even most of the time, my brother will go instead of my mother. Another moment to prove how important he is, was to take care the three of us as the oldest son and provide us with food by cooking, guiding us through the SATs, and moral support if something is bothering us.

Letter from Elizabeth Hong; attached as part of Exhibit 1.

In this case, Mr. Hong downloaded child pornography and viewed it. Forensic analysis of his computer revealed no evidence of his distributing child pornography or engaging in chat room discussions relating to sexual interest in children. It revealed no communication with minors. When federal agents arrived at his doorstep in March 2018, Mr. Hong readily admitted he had downloaded child pornography and he signed a consent to search his electronic devices.

Notwithstanding the nature of the offense and its seriousness, the Court has ample evidence that supports the conclusion that Mr. Hong is not a future risk to society. The Court has received letters of support for Mr. Hong from his family. While they share society and Phillip's abhorrence of his crimes, they have chosen to express their support for him because they know the person he is apart from the crimes he committed. His family support is an important factor in analyzing Mr. Hong's future risk to society and the need for a lengthy period of incarceration. Specifically, the fact that Mr. Hong will have the support of his family who are fully aware of his crimes is a strong indication of a low risk of recidivism. It is clear that had his parents known about his behavior, they would have intervened. All of the people closest to him will know what he needs to do to remain a positive member of society- keep his sex offender registration current, only use the internet subject to strict restrictions, and participate in sex offender and mental health treatment. Frankly, the fact that his family is aware of his actions and motivated to help him will serve as a more effective deterrent to future behavior than a lengthy prison sentence.

## II. THE GUIDELINE SENTENCING RANGE SHOULD BE ACCORDED LITTLE WEIGHT IN DETERMINING WHAT SENTENCE TO IMPOSE.

The probation department calculates the advisory guideline sentencing range (GSR) as 97 - 121 months. As in virtually all cases involving the receipt and possession of child pornography, the guidelines that result in this case from Section 2G2.2 are overly inflated and of little help to this Court. Quite simply, the federal child pornography guidelines are so divorced from the Sentencing Commission's institutional role in determining applicable sentencing ranges, and so bereft of any empirical support, that the Court, should give it little weight in determining Mr. Hong's sentence.

Perhaps no other guideline has provoked such an onslaught of criticism. The Second Circuit described the provision as "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010). *See United States v. King*, 741 F.3d 305, 309 (1st Cir. 2014) ("We are not unsympathetic to concerns about perceived harshness in the child pornography guidelines.") (citing *Dorvee*). The *Dorvee* Court provided a detailed history of the amendments to the child pornography guidelines and how Congressional interference abrogated the Sentencing Commissions historical role of using empirical data regarding past sentencing practices when pegging current guideline offense levels. *Id.* at 184-85. The court concluded that the amendments effected by the PROTECT Act of 2003 "evince a 'blatant' disregard for the Commission and are 'the most significant effort to marginalize the role of the Sentencing Commission in the federal sentencing process since the Commission was created by Congress'". *Id*. at 185 (internal citations omitted).

The *Dorvee* Court further analyzed how the mechanical application of the child pornography guidelines was "fundamentally incompatible with § 3553(a)." *Id.* at 187. Specifically, the Court addressed the dizzying array of enhancements that apply in almost every case. The Court noted that the impact of "§2G2.2 sentencing enhancements cobbled together through the process routinely

5

result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases." *Id.* at 186. The Court noted that the Commission's sentencing data shows that out "of all sentences under §2G2.2 in 2009, 94.8% involved an image of a prepubescent minor (qualifying for a two-level increase...), 97.2 % involved a computer (qualifying for a two-level increase...), 73.4% involved an image depicting sadistic or masochistic conduct or other forms of violence (qualifying for a four-level enhancement...), and 63.1% involved 600 or more images (qualifying for a five-level enhancement)." The Court concluded that application of these enhancements "that are all but inherent to the crime of conviction" results in a "13 level [increase], resulting in a typical total offense level of 35." *Id*.

The frequency of certain enhancements in the child pornography guideline was also pointed out in the Sentencing Commission's December 2012 report to Congress. *See* U.S. Sentencing Commision, *Report to the Congress: Federal Child Pornography Offenses* at 209 (2012) (available at http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Sex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/index.cfm) ["*Commission Report*"]. The Commission found that in non-production cases, several of the sentencing enhancements applied in the vast majority of §2G2.2 cases:

**Table 8–1**
**FY10 Application Rates of Enhancements in §2G2.2**

|  | All §2G2.2 Cases<br>N = 1654 | Possession<br>N = 874 | Receipt<br>N = 428 | Transportation/<br>Distribution<br>N = 352 |
|---|---|---|---|---|
| P/P/M | 96.3% | 95.4% | 97.4% | 96.9% |
| S/M | 74.2% | 68.1% | 80.1% | 82.1% |
| Distribution | 41.6% | 26.8% | 33.9% | 87.8% |
| Use of Computer | 96.3% | 95.8% | 96.0% | 97.7% |
| Number of Images | 96.9% | 94.6% | 98.4% | 94.6% |
| Pattern of Activity | 10.2% | 7.3% | 13.3% | 13.6% |

*Id*.

The sentencing guidelines call these enhancements "Specific Offense Characteristics." As the Court in *Dorvee* points out, they are anything but specific, in that they apply to almost all convictions under the guideline.

The *Dorvee* decision is only one in a series of unrelenting criticism of the child pornography guideline. *See, e.g., United States v. C.R.*, 2011 WL 1901645 (E.D. N.Y. May 16, 2011) (citing numerous studies showing that there is no empirical evidence supporting a causal link between possession or viewing of child pornography and contact offenses); *United States v. Riley*, 655 F.Supp.2d 1298 (S.D.Fla.2009) (defendant sentenced to minimum mandatory 60 months rather than within recommended guidelines range of 210-260 months); *United States v Phinney*, 599 F.Supp.2d. 1037 (E.D.Wis.2009) (defendant sentenced to 6 months rather than within the recommended guideline range of 37-46 months); *United States v. Hanson*, 561 F.Supp.2d 1004, 1009 (E.D. Wis. 2008) (noting that from 1994 to 2007 the mean sentence in child pornography increased from 36 months to 110 months because of "arbitrary increases" rather than by any empirical approach by the Sentencing Commission); *United States v. Johnson*, 588 F.Supp.2d 997, 1003 (S.D.Iowa 2008) ("As far as this Court can tell, these modifications [to the child pornography guideline] do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses."); *United States v. Grober*, 595 F.Supp.2d 382, 397 (D.N.J. 2008) (characteristics identified by the Sentencing Commission as enhancements are "irrational because logically and factually, the characteristics are simply not genuine aggravating factors. Rather, they are inherent in just about any downloading offense.").

The criticism does not end there. *See United States v. Rausch*, 570 F.Supp.2d at 1298 (lack of empirical support for resulting guideline range of 97-120 months along with poor health justified imposing sentence of lifetime supervised release with home detention); *United States v. Doktor*, Slip Copy, 2008 WL 5334121 (M.D.Fla. December 19, 2008) (non-guideline sentence of 36 months imposed on finding that guidelines-produced range of 57-71 empirically unsupported); *United States v. Stern*, 2008 U.S. Dist. LEXIS 102071 (N.D. Ohio, Dec. 17, 2008) ("illogic" of the child pornography possession guideline rendered it worthy of only limited deference and sentence of twelve months sufficient notwithstanding 46-57 months guideline range).

In fact, the Sentencing Commission's report was compiled in large part due to the increasing rate of below-guideline sentences for offenders sentenced under USSG § 2G2.2, pursuant to its statutory duty to "consider whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions," *Commission Report* at ii, and because "as a result of recent changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." *Id.* at ii.

The Commission explained that because the enhancements for computer use and type and volume of images "now apply to most offenders," the guideline "fail[s] to differentiate among offenders in terms of their culpability." *Id.* at iii, xi. It explained that "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre of child pornography that previously was not widely circulated." *Id.* at 6. Because "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders," *Id.* at xi,

8

the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors," *Id.* at 323. The cumulative enhancements addressing the content and volume of images possessed, "in addition to base offense levels of 18 or 22, result[] in guideline ranges that are overly severe for some offenders in view of the nature of their collecting behavior." *Id.*

As the courts' analyses in the above cases demonstrate, as well as the Sentencing Commission's findings and plea to Congress, neither the elevated base offense level nor the myriad enhancements that drive child pornography sentences skyward are supported by past sentencing practice or empirical data. Similarly, this Court has acknowledged that the guideline for this offense "doesn't deserve great deference." Transcript of Sentencing at 56, *United States v. Mark Rita*, Criminal No. 12-CR-10045-MLW (August 28, 2012). In imposing a sentence of probation in a case with a Guideline Sentencing Range of 70 to 87 months, this Court opined:

> I will say that I think the guideline – and I think the government implicitly recognizes that the guideline range doesn't deserve great deference. There has been, over the 25, 26 years since the guidelines went into effect, unusual Congressional intervention contrary to the intentions of the sentencing commission. I think one of the first times this happened it resulted from some testimony I gave to the sentencing commission, they wanted to lower – although I wasn't advocating it necessarily, but lower the guideline range for possession to put it on the fence between probation and incarceration and Congress not only vetoed the amendment, they raised the guideline range, but it wasn't based on empirical stuff. You know, on the other hand, it reflects some public views of the seriousness of the offense. *Id.* at 56-57.

Here, the presentence report includes enhancements for use of computer, prepubescent minor, and number of images. PSR ¶¶ 20, 22, & 23. Several Judges in this District have not followed the guideline as constructed. Instead, they have "reconstructed" the guideline by excluding the enhancements that apply virtually to 100% of child pornography cases – use of a computer, number of images, and prepubescent minors. *See*

9

generally *United States v. Keith*, 11-10294-GAO, Dkt. Entry 106, pp. 51-54. Absent those enhancements, Mr. Hong's guideline range would be 37-46 months. While below the mandatory minimum sentence of 60 months, such a range is more reflective of what an appropriate punishment is in this case.

### III. AN APPROPRIATE SENTENCE

Under 18 U.S.C. § 3553(a), the Court should impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in Section 3553(a)(2). The sentence must 1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; 2) afford adequate deterrence to criminal conduct; 3) protect the public from further crimes of the defendant; and 4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a)(2). A 60 month sentence followed by five years supervised release arguably is more than sufficient, but there can be little argument that such a sentence is a stern punishment for a 24 year old man with no prior criminal record.

A five-year prison term is a lengthy sentence that adequately reflects the seriousness of the offense and provides just punishment. At age 24, Mr. Hong has learned a serious lesson that will carry life-long consequences. This is Mr. Hong's first contact with law enforcement as well as his first time in jail. While the crime before the court is quite serious, and hence deserving of a prison term as reflected by Congress's imposition of mandatory minimum sentences and their directives as to the sentencing guidelines, Mr. Hong's conduct in this case is not dissimilar to other offenders who have received sentences significantly below the guideline sentencing range. Mr. Hong's conduct was confined to the internet. Mr. Hong has never sexually abused a child. His punishment should be for his participation in a market which relies on the exploitation of children, not for the

10

actual abuse of those children. Five years incarceration is a long period of time for a defendant's first prison sentence. In addition, Mr. Hong will be on supervised release for at least five years, which, in addition to its purposes of rehabilitation and protection of the public, which constitutes additional punishment.

Furthermore, the Court should recognize the severe collateral consequences associated with a conviction such as this as part of Mr. Hong's punishment. Put simply, Mr. Hong's life will be drastically harder upon his release from custody. Mr. Hong will try to work and maintain a close relationship with his family in a society that vilifies convicted sex offenders. Mr. Hong will have to register as a sex offender, with the possibility that that information will be published to the community and his friends and neighbors. He will be shamed for the rest of his life. As several courts have recognized, collateral consequences of conviction, such as registration as a sex offender, are relevant to the "need" for the sentence imposed to reflect just punishment. *See, e.g., United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008) (overruling prior holding that it was inappropriate for the district court to consider the lasting effects of being required to register as a sex offender); *United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir. 2007) (affirming the district court's finding that the defendant "warranted a lower sentence because he lost his teaching certificate and his state pension as a result of his conduct," because "[c]onsideration of these facts is consistent with § 3553(a)'s directive that the sentence reflect the need for just punishment," and "adequate deterrence"); *United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008) (affirming below-guideline sentence based in part on court's findings that defendant suffered substantial mental and personal stress as a result of his prosecution).

With regard to deterrence, the empirical evidence is unanimous that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. *See*

Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."); David Weisburd *et al.*, *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment). Even the Sentencing Commission has found that "[t]here is no correlation between recidivism and guidelines' offense level. . . . While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended or designed to predict recidivism." U.S. Sent'g Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 15 (2004).

Nor does lengthy imprisonment of child pornography possessors have any deterrent or preventive effect on the production or dissemination of child pornography. This is in part because the production and dissemination of child pornography is a widespread, international problem. There is no evidence "remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet." *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1103-4 (N.D. Iowa 2009) ("[W]e cannot sentence Internet users and sharers of child pornography fast enough or long enough to make a dent in the availability of such material on the Internet," and while deterrence is a "laudable" goal, it "is not being achieved according to any empirical or other

evidence in this case or, for that matter, empirical evidence in any other case or source that I am aware of"). Likewise, the Commission acknowledges that there is no social science research supporting the theory that criminal punishments "have affected commercial or non-commercial 'markets' since the advent of the Internet and P2P file-sharing." *Commission Report, supra,* at 98.

The public will be protected from Mr. Hong for the period of incarceration during which he is incapacitated from society. Again, his crimes took place on the internet, and so what the public will be saved from while Mr. Hong is in prison is one less consumer of child pornography. When Mr. Hong is released from prison, he will be subject to the sex offender registry laws and as well as stringent monitoring by probation, all of which will continue to serve to protect the public.

However, as a first time offender, the likelihood of recidivism for Mr. Hong is low, despite the "conventional assumption … that the rate of recidivism (in particular, sexual recidivism) by federal child pornography offenders is high." *Commission Report, supra*, at 293. The Sentencing Commission's own recidivism study revealed that among child pornography defendants in criminal history category I, 73.9% did not recidivate. *Id.* at 302.

## CONCLUSION

Mr. Hong knows that his conduct in this case was inexcusable and serious and that he must be punished for his actions. However, he asks this Court to consider him in his entirety rather than simply the person who committed this crime. A 60 month sentence followed by a five-year period of supervised release appropriately balances the relevant sentencing factors and constitutes a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a).

PHILLIP HONG
By His Attorney,

/s/Stylianus Sinnis
Stylianus Sinnis, BBO # 560148
Federal Public Defender Office

District of Massachusetts
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061

## **CERTIFICATE OF SERVICE**

    I, Stylianus Sinnis, Esquire, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on April 10, 2019.

*/s/ Stylianus Sinnis*
Stylianus Sinnis